## Crozer's Estate.

49

Argued January 14, 1929. Before Frazer, Walling, Simpson and Sadler, JJ.

*Kingsley Montgomery,* for appellant.—The will of Mary S. Crozer was duly proven. The right of appellant to the testamentary provisions in its favor is made prima facie by the probate of the will: Folmar's App., 68 Pa. 482; Amberson's Est., 204 Pa. 397; Arnold's Est., 249 Pa. 348.

The law enables the court only to provide for directors for the first year, elected for one year. Matters not required in a charter are surplusage.

The provision that directors elected by the stockholders or members and that directors first named or appointed by banking companies shall hold their office until their successor shall be elected negatives the idea that directors named in the charter for the first year hold over until their successors have qualified.

While directors may hold over, there is no rule which compels them to do so, and where a director ceases to take part in the management of the corporation or the meetings of its directors he is not bound to see that a successor is selected in his place: Richards v. Bank, 154 Pa. 449; Wanner v. Church, 174 Pa. 466; Zion Church v. Light, 7 Pa. Superior Ct. 223.

A member of a charitable corporation is not an interested witness: Davies v. Morris, 17 Pa. 205; Carson's Est., 244 Pa. 401; Johnson's Est., 249 Pa. 339; Evans' Est., 29 Pa. C. C. R. 282.

The disqualifying interest must be present, certain and vested and not uncertain, remote or contingent: Jeanes' Est., 228 Pa. 537; Carson's Est., 244 Pa. 401; Johnson's Est., 249 Pa. 339; Darlington's Est., 289 Pa. 297; Ralston Est., 290 Pa. 374.

*Wm. Barclay Lex*, with him *Charles C. Norris, Jr., A. B. Geary* and *C. J. Hepburn,* for appellee.—We rely on two decisions, neither of which have yet been overruled or questioned: Kisner's Est., 254 Pa. 597; Stinson's Est., 232 Pa. 218.

OPINION BY MR. JUSTICE WALLING, March 18, 1929:

The J. Lewis Crozer Home for Incurables and Homeopathic Hospital, appellant, is a charitable corporation, located in Delaware County. It was named in memory of the late J. Lewis Crozer, whose will makes financial provision for such an institution. His widow, Mary S. Crozer, the testatrix, helped establish the home and prior to her death in 1918 was its financial support. Her will made in 1914 and its second codicil, made in 1916, contain large legacies thereto. To both, the name

of William B. Broomall appears as one of the two sub-
scribing witnesses; because of this, Mrs. Crozer's next
of kin challenged the validity of these legacies, averring
that he was not such a disinterested witness as is re-
quired by statute, in case of testamentary gifts to a
charity. Upon a full investigation, the orphans' court
sustained this contention and decreed those legacies to
the next of kin; thereupon, the home brought this ap-
peal.

The facts as found by the orphans' court were sup-
ported by ample evidence and the decree properly fol-
lowed. William B. Broomall was a prominent member
of the Delaware County Bar and served for many years
as a judge of the courts of that county. Appellant was
chartered in 1898 and Judge BROOMALL was an incorpo-
rator and signed the charter as such, whereby he became
a member of the corporation. Moreover, he was made
an original director and served continuously in that ca-
pacity and as secretary of the board from its organiza-
tion until his death, in 1927, a period of nearly thirty
years. Furthermore, the constitution of the home stipu-
lates that, among other officers, the secretary shall be
elected from the members of the board of directors,
hence, the fact that Judge BROOMALL acted as secretary,
during all the years, is at least corroborative evidence
that he was also a director. The minutes also show that,
aside from being chosen as an original director, the
judge was later elected to that office on one or more
occasions. He was present at every corporate meeting
but one during that time, kept and certified all the min-
utes of corporate meetings, some of which were held in
his office. He also had charge of the records and the
seal of the corporation. As head of the committee he
prepared or helped prepare its constitution and by-laws.
He was a faithful official of the corporation during all
those years, but overlooked the fact that his relation to
the charity disqualified him from attesting a will in its
favor.

52

Section 11 of the Act of April 26, 1855, P. L. 332, 4 Purdon's Digest (13th ed.) 5129, provides, inter alia: "No estate, real or personal, shall hereafter be bequeathed, devised, or conveyed to any body politic, or to any person, in trust for religious or charitable uses except the same be done by deed or will, attested by two credible, and at the time, disinterested witnesses, at least one calendar month before the decease of the testator or alienor; and all dispositions of property contrary hereto, shall be void." This has been reënacted but not modified by more recent statutes. See Act of June 7, 1911, P. L. 702, also section 6 of the Wills Act of June 7, 1917, P. L. 403, 406. This court has uniformly held that those having charge of the financial affairs of the charity or church, like directors of the former or trustees of the latter, had such a direct interest therein as to be disqualified under the statute. The true test is stated by Mr. Justice ELKIN, delivering the opinion of the court in Kessler's Estate, 221 Pa. 314, 323, viz: "The words, 'disinterested witnesses,' used in this act, must be read and understood in connection with the subject-matter of the statute, the evils to be avoided, the requirements intended to safeguard the rights and property of persons approaching death, and the remedy to be provided in such cases. When so read and understood, the interest which disqualifies a witness under the act is such an interest as appears to exist at the time of the execution of the will, either by the terms of the will itself or by reason of the attesting witness being then interested in the religious or charitable institutions for which provision is made by the testator, or both, or either, as the case may be." This is quoted with approval by Mr. Justice BROWN, speaking for the court in Stinson's Estate, 232 Pa. 218, 224, which holds that a direct interest (similar to that held by Judge BROOMALL in the instant case) disqualified the witness and avoided the legacy. Fetterhoff's Estate, 228 Pa. 535, holds that: "Where a will includes a number of legacies and a gen-

eral residuary devise for charitable purposes, and two of the three attesting witnesses are connected with one of the charities benefited, in the capacity of trustees, while the third witness is an officer in several of the religious and charitable organizations benefited, the witnesses are disqualified under the Act of 1855 and the charitable gifts fail." These authorities have never been overruled or modified and are controlling of the instant case. We reached the same conclusion in Kisner's Estate, 254 Pa. 597, although the legacy was sustained there on a finding by the trial court that the witnesses had resigned as directors of the charity before witnessing the will. See also Channon's Est., 266 Pa. 417; Palethorp's Est., Provident Life & Trust Co.'s App., 249 Pa. 389; Arnold's Est., 249 Pa. 348.

True, we have held that the disqualifying interest must be something more than a mere friendly or fraternal interest such as is entertained by a member of the Masonic Order for one of its institutions: (Ralston's Estate, 290 Pa. 375); or by a member of the Independent Order of Odd Fellows, for one of its homes. We have also held that an elder in a church not interested in its financial affairs was a disinterested witness within the statute: Darlington's Estate, 289 Pa. 297. The same has been held of an employee of a charitable institution. While the disqualifying interest must be certain, it need not be a matter of personal benefit to the witness. To hold that those only were disqualified who had such an interest would practically nullify the statute, for who has a personal financial interest in a charity or church? The statute, as we have construed it, disqualifies those who have charge of and responsibility for the business and financial affairs of the institution.

Appellant is the only institution of that name in Delaware County, and we are not impressed with the contention that Judge BROOMALL ceased to be a director because he was not annually reëlected to that office. The charter, after naming him and other directors, says:

"The above named directors shall continue in office until death, resignation, refusal or inability to act, and the board of directors shall be the sole judge of a vacancy from a refusal or inability to act. All vacancies shall be filled by the board of directors." True, the statute provides·for the annual election of directors, but also that those in office shall hold their office until others are chosen and qualified. As no one was ever chosen to succeed Judge BROOMALL, while he lived, it follows that he continued in office both as a de facto and de jure director, although either would be a sufficient disqualification. That a corporation is bound by the acts of its de facto officers, see Zearfoss v. F. & M. Institute, 154 Pa. 449; Zion Church v. Light, 7 Pa. Superior Ct. 223; 8 Am. & Eng. Enc. of Law (2 ed.) 775.

The decree is affirmed and appeal dismissed at the cost of appellant.