## Dayton's Estate.

*Decedent's estates—Promissory notes—Indemnity—Consideration—Sufficiency.*

A decedent in his lifetime gave a note to his brother in the sum of $1,000. The testimony established that the note was given to indemnify payee for any loss connected with the failure of a bank. Further testimony was introduced to show that the decedent extended the obligation during his lifetime to include any loss which the payee might have suffered in the purchase of an oil lease negotiated by the decedent.

*Held:* That the agreements of the decedent to include both transactions in the indemnity secured by the promissory note were valid, and that the holder of the note was entitled to be paid in accordance with the losses, against which he was secured.

Argued April 13, 1926. Appeal No. 161, April T., 1926, by John R. Dayton, from decree of O. C. Clarion County, May T., 1925, No. 22, in the matter of the Second and Final Account of H. M. Hufnagle, Surviving Executor of the Last Will of W. E. Dayton, deceased. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Exceptions to Auditor's report. Before HARVEY, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions. Exceptant appealed.

*Error assigned,* among others, was the decree of the court.

*George F. Whitmer,* and with him *Don C. Corbett,* of *Corbett & Rugh,* for appellant.—An agreement under seal to make a gift inter vivos may be enforced as a legal obligation. The seal imports a consideration: Mack and Person's Appeal, 68 Pa. 231; Hummel's Estate, 161 Pa. 217; Osterhout's Estate, 148 Pa. 223; Kline v. Fitzgerald, 267 Pa. 468; Dixon v. Minogue, 276 Pa. 562.

*W. J. Geary,* for appellee.—A new consideration for a new promise is indispensible: Campbell's Estate, 7 Pa. 100; Maule v. Bucknell, 50 Pa. 39; Nugent v. Wolfe, 111 Pa. 471; Kennedy's Executors v. Ware, 1 Pa. 445; Albert's Executors v. Ziegler's Executors, 29 Pa. 50.

OPINION BY TREXLER, J., July 8, 1926:

On May 17, 1912, W. E. Dayton, gave to John R. Dayton, a note under seal for $1,000, bearing interest at four per cent, payable at the Citizens Trust Company of Clarion, Pa., containing the usual words "without defalcation, value received, waiving inquisition, exemption, appeals, demand, etc.," and empowering the entry of judgment.

This note was presented by John R. Dayton to the executors of the estate of W. E. Dayton and in the hearing before the auditor, John R. Dayton testified, and the auditor finds, that the note was given by the decedent to the plaintiff "to secure him against losses upon his account in the Second National Bank of Clarion, Pa., at the time it closed." It appears that the plaintiff, at the request of the decedent, had trans-

ferred his account to the bank which afterwards failed, and thereby loss ensued to the plaintiff.

The auditor further finds as a fact "that the decedent, W. E. Dayton, at a considerable later time, possibly about 1913, induced John R. Dayton to buy an interest in an oil lease, which was later sold at a loss of about $730. That on or about this time, W. E. Dayton, in speaking of this loss, asked John R. Dayton if he still had the note given for the Second National Bank (account) yet, and when answered in the affirmative, said in effect he should keep the note until the affairs of the Second National Bank were settled up and if the note was not enough to cover his losses in that (the loss on a lease) and the Bank account, that he (W. E. Dayton) would make it good. Speaking of this transaction at a later time to Mr. G. F. Whitmer, the decedent said: "Well, I know, but I gave him a note on account of his losses in the Second National Bank and if he gets that he won't lose anything by his deal."

The auditor found that the note was given as an indemnifying obligation to secure the payment of certain losses which John R. Dayton had suffered when said losses were to be determined. "With such a character impressed upon the note at the time, we can justify the allowance of the loss of the Second National Bank account which has been allowed by the Auditor. But when the instrument has been delivered and its character as such indemnifying obligation fixed, we cannot add to it by a parol contract without consideration, made a considerable time after the delivery of the note, without offending against the Act of April 26, 1855, P. L. 308," and the lower court took the same view.

The question, therefore, before us is whether the note is invalid so far as it covers the loss in the oil lease as being without consideration and within the statute of frauds. It will be noted in the first place, that the note upon its face is an absolute promise to pay the sum of $1,000. Consideration is acknowledged in the note and is also purported in the seal attached

to it. The maker considered himself under a moral obligation to make good the losses of his brother, John, which occurred by reason of the failure of the bank in which the decedent had persuaded his brother to put his money. There can be no doubt about it that this was a moral consideration which was sufficient to sustain a promise to pay; and, while the amount to be paid was still unascertained, he further agreed that the note was to be kept by the payee and was to be applied to cover his loss, not only in the bank, but in an oil lease in which the maker had induced his brother to invest his money. The latter furnished a moral consideration which was equally valid as the loss on the bank account. The first arrangement was by parol. Any agreement affecting the subjects to be included in the consideration for the note, did not change the fact as stated before that the acknowledgement of the debt was under seal and imported consideration. The statute was satisfied by the contract in writing. Every essential of a contract is contained therein. If the losses to be covered by the note had not materialized, we see no reason why the maker could not have told his brother to keep the note to recompense him for other matters for which the maker considered himself morally responsible. He could have made him a present of the note. "A voluntary bond is, both in equity and in law, a gift of the money." Sherk v. Endress, 3 W. & S. 256. An agreement under seal to make a gift inter vivos may be enforced as a legal obligation: Mack's Appeal, 68 Pa. 231; Eisenlohr's Estate, 258 Pa. 438. If this note had been pledged to secure advances, and the money for which it was pledged, had been paid, would there have been any legal obstacle to the parties' agreeing in parol that the pledge should cover some other matters not in contemplation of the parties when the note was made? There were no intervening rights. They could do as they pleased with their own. "It has never been held that when the statute is satisfied by a writing, it requires those things

which are done under the writing to be also reduced to writing.'' Bonner v. Campbell, 48 Pa. 286.

If a new judgment note had been given when the second stipulation was made, the lower court, no doubt, would have held that such a judgment would have been valid to the extent of the loss suffered in the oil lease. We see no reason why the parties could not agree that the judgment note which had already been given should be used for some substituted purpose not contemplated in the verbal understanding that the parties had when the note was given.

The decree of the Orphans' Court is reversed and the record is remitted in order that distribution may be made in accordance with this opinion. Costs to be paid by the Estate.